## Commonwealth ex rel., Appellant, v. Davidson.

*Lunacy—Traverse—Right of mother to traverse—"Aggrieved person"—Weak-minded person—Act of May 8, 1874, P. L. 122.*

1. A finding in a lunacy proceeding that a person is not a lunatic, may be traversed.

2. A mother is an "aggrieved person" within the meaning of the Act of May 8, 1874, P. L. 122, and has a right to traverse a finding.

3. In such case, the mother is aggrieved not only because of the blood relationship, but also because of property rights involved, and the liability to support her child.

4. The fact that the alleged lunatic had previously been adjudged weak-minded, and a guardian appointed for her, does not defeat her mother's right to traverse a finding, in a lunacy proceeding, that the daughter was not a lunatic.

5. Proceedings to declare a person weak-minded are effective from the date of the decree, but, in a lunacy proceeding, the commission must find at what time the person became of unsound mind, so that the period of time prior to the decree declaring the ward weak-minded, is not affected by the latter decree.

Argued October 12, 1920. Appeal, No. 113, Oct. T., 1920, by plaintiff, from order of C. P. Allegheny Co., Jan. T., 1920, No. 260, making absolute rule to quash traverse, in case of Commonwealth ex rel. Catherine Hibbert v. Eleanor H. Davidson, an alleged lunatic. Before

BROWN, C. J., FRAZER, WALLING, SIMPSON and KEPHART, JJ.  Reversed.

Rule to quash traverse.

The court, in an opinion by DREW, J., quashed the traverse.  Plaintiff appealed.

*Error assigned* was above order, quoting it.

*Harvey A. Miller,* of *Miller & Nesbitt,* with him *A. O. Fording* and *D. J. Snyder,* for appellant.—Any person against whom a decision is rendered in the proceedings, is "aggrieved" within the meaning of the act: In re Dickinson, 1 W. N. C. 96.

The word "aggrieved" relates as well to the grievance felt by a blood relation acting in the interest of the lunatic as to a grievance inflicted upon property rights: Com. ex rel. v. Pitcairn, 204 Pa. 514; Bullitt's App., 242 Pa. 294.

*W. Clyde Grubbs,* with him *William T. Dom, Jr.,* for appellee, cited: Meurer's App., 119 Pa. 115; Com. v. Pitcairn, 204 Pa. 514; Wolf's Case, 195 Pa. 438; Dickinson's Est., 1 W. N. C. 96.

OPINION BY MR. JUSTICE KEPHART, December 31, 1920:

Catherine Hibbert, mother of Eleanor H. Davidson, instituted a proceeding to inquire into her daughter's mental condition.  The latter, some years before, had been adjudged weak-minded by the court and a guardian appointed to take care of her and the estate.  The inquest found that Eleanor Davidson, "at the time of taking the inquisition, was not a lunatic."  The mother traversed the finding and the guardian asked to intervene to contest the traverse, assigning as reasons that the mother was not a party aggrieved and traverse would not lie unless the respondent had been adjudged a lunatic, the finding of the sheriff's jury on this issue being

conclusive. The court below held that the mother was not a person aggrieved within the meaning of the act, and denied the traverse. The Act of May 8, 1874, section 1, P. L. 122, did not impose as a condition to a traverse that there must be an affirmative finding of insanity, but gave to "every person aggrieved by any inquisition" the right to have a jury determine whether the mind of the party charged is deranged to such an extent as to disqualify him from conducting himself with personal safety to himself and others, and from managing and disposing of his own affairs and discharging his ordinary duties: M'Elroy's Case, 6 W. & S. 451; Haggerty v. Haggerty, 44 Pa. Superior Ct. 417, 422.

The word "aggrieved" does not refer only to a right of property or pecuniary interest directly affected by the decree, or to one whose property right might be established or divested by it. It relates to the grievance felt by the blood relation acting in the interest of the lunatic for the protection of his property, as well as to a grievance inflicted on property right. The act under which the proceeding was brought gives to the mother, near relatives, or persons interested in the estate, the sole right to institute the proceedings necessary to determine lunacy. It would seem strange that the relatives, having this right, could not proceed as permitted by the act, in event of an adverse finding, because they are not parties technically aggrieved. They are not only parties aggrieved because of the relationship, which may prompt a legal determination of the question in the interest of the safety of the lunatic and others, or his property, but, if necessary, because they have a substantial property interest that may be affected on which to found their right of traverse. Not only does the law require notice to be given those relatives of the filing and settlement of accounts and other matters in connection with such estates, but if the unfortunate person happens to dissipate all his property, or to be without property, these near relatives, if legally able, are required to pay

the expense of his maintenance as an inmate of an asylum, either feeble-minded or lunatic. The State provides institutions where persons of unsound mind, destitute of financial means, may be detained, with the benefit of medical aid and proper sustenance. They are not permitted to roam at large, a menace to themselves, others, or property. In such cases the near relatives, "if legally able," are required by law to defray the expense incident thereto, a charge fixed by the act. This future financial responsibility would give them a keener interest in the conclusion of the proceeding as here begun; accordingly, the mother had the right to traverse: Wolf's Case, 195 Pa. 438; Com. ex rel. v. Pitcairn, 204 Pa. 514; Bullitt's App., 242 Pa. 294.

But it is charged that, inasmuch as the guardian has the same powers and duties as a committee in lunacy, and his ward is under the same legal incapacities as to contracts or gifts as a lunatic, this proceeding is but a duplication of effort, with no substantial result therefrom, and no grievance to complain of. This would be true if the different controlling acts exactly covered the conclusions to be reached. Proceedings to declare a person weak-minded are effective from the date of the decree, but, with respect to a lunacy proceeding, the commission must find, "how long he hath been so"; they must determine, retrospectively, when the person became of unsound mind, so that the period of time prior to the decree declaring the ward weak-minded is not affected by the latter decree. As to that time, traverse was a substantial right and the inquiry would embrace as well the condition of the mind since that decree, notwithstanding the proceeding to declare Eleanor Davidson weak-minded.

The decree of the court below is reversed, the traverse reinstated, and a procedendo awarded.